151 F.3d 1033
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Allan J. STEVO, Plaintiff-Appellant,
v.
CSX TRANSPORTATION, INC., a Virginia corporation, Defendant-Appellee.
 No. 97-3974.
 United States Court of Appeals, Seventh Circuit.
 Argued July 7, 1998.
Decided July 27, 1998.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division No. 95 C 7449 Paul E. Plunkett, Judge.
 Before Hon. WILLIAM J. BAUER, Hon. JESSE E. ESCHBACH, Hon. TERENCE T. EVANS, Circuit Judges.
 
 ORDER
 
 1
 Appellant Allen Stevo, brought a complaint against CSX Transportation, Inc. ("CSXT"), alleging that the company, by failing to promote him to an account executive position and by refusing to sponsor him for a Northwestern University Kellogg Business School program, had retaliated against him for filing a complaint under the Americans with Disabilities Act ("ADA"). See 42 U.S.C. § 12101 et seq. The district court granted summary judgment for CSXT. Stevo appeals. Because the district court correctly determined that CSXT acted with a legitimate reason in refusing to promote Stevo, we affirm.
 
 BACKGROUND
 
 2
 CSXT hired Allen Stevo as a switchman at its Chicago location in 1971. Stevo continued working for the company in that capacity until 1991, when he suffered a herniated disk. After a prolonged period of medical treatment, two doctors released Stevo to return to work without restriction. But Stevo did not return to work because he did not feel strong enough to do so. A different doctor then diagnosed Stevo with degenerative lumbar spine disease and, in April 1994, released him to return to work in a lighter-duty position. Accordingly, Stevo refused to return to his job as a switchman, but informed Beverly Jackson, CSXT's Director of Vocational Rehabilitation, that he was interested in a lighter-duty position at CSXT.
 
 
 3
 Following April 1994, CSXT invited Stevo to apply for various CSXT jobs outside of Chicago. But Stevo refused to apply for such jobs, or for jobs in Chicago that he felt were too physically demanding for him, such as that of a locomotive engineer. Most of the available jobs were outside of Chicago.
 
 
 4
 In November 1995, Stevo filed his initial ADA complaint against CSXT, alleging that CSXT had discriminated against him by failing to provide him with work that his disability--his back condition--would not prevent him from doing.
 
 
 5
 In January 1996, CSXT announced an opening for a position as account executive in its Sales Department. The position required a high degree of experience in the management and marketing fields, which Stevo did not have. Nonetheless, Stevo applied for the job and made continued inquiries of Dan Stoll, CSXT's Director of Human Resources, regarding the status of his application. Stevo claims that on May 29, 1996, Stoll told him: "I would not touch a person like you, with your background ... especially what has happened over the past few years ... with you hiring an attorney.... You will never get a job in the Sales Department, so stop trying." Stoll denies that he made any of these statements to Stevo. CSXT eventually hired Janet Keating, an outside candidate. Ms. Keating was highly qualified for the account executive job, having previously worked at Union Pacific Railroad Company for six years as account manager and at Omnitrax (another railroad company) for one year as director of marketing.
 
 
 6
 During this period, Jackson encouraged Stevo to seek additional education or training so that he could qualify for a greater number of jobs. In June, 1994, Stevo told Jackson that he would like CSXT to sponsor his participation in the Northwestern University Kellogg Business School program. Jackson asked Stevo to obtain information from Kellogg for her. Stevo claims that Jackson told him she thought the Kellogg program was "a good idea and something that [CSXT] would be able to sponsor." However, on June 24, 1996, Jackson wrote to Stevo that CSXT could not sponsor his participation in the program, explaining that CSXT sponsored advanced degree programs only for employees whose physical capabilities were so limited that an advanced degree program provided the only possible way they could obtain gainful employment. Jackson encouraged Stevo to investigate vocational or computer training programs.
 
 
 7
 On the same day, Stoll also wrote to Stevo, stating that he "wanted to make sure that there was no misunderstanding with respect to the[ir] several telephone conversations" regarding Stevo's application for the Sales Department job. Stoll went on to state as follows:
 
 
 8
 During our conversation on June 3, 1996, you questioned whether your pending litigation against the company or retention of an attorney might have a negative impact on your ability to obtain a promotion to a position in the Chicago Sales Office. As I made clear to you during that conversation, neither your retention of an attorney, nor your pursuit of litigation against the company has had any bearing on our selection of candidates for positions in the company's Chicago Sales Office. We have selected for those positions the candidates who best met the criteria for those positions ... The resume that you have submitted does not reflect ... sales or marketing experience.
 
 
 9
 Finally, Stoll encouraged Stevo to continue applying for non-contract positions for which he believed he might be qualified.
 
 
 10
 Two weeks later, Stevo filed a charge of retaliation under the ADA. Noting that Jackson and Stoll had addressed their letters to him on the same date, Stevo claimed that both the decision not to hire him for the account executive position and the decision not to sponsor him for the Kellogg program were taken in retaliation for his filing of the ADA suit.
 
 
 11
 The district court granted summary judgment for CSXT on all of Stevo's claims. The court concluded that Stevo did not have a disability under the ADA. The court noted that Stevo was fit enough to perform various jobs but that he had refused to apply for them when they were called to his attention, and that he had failed to identify a vacant job position in which he was interested and for which he would have qualified. With respect to the account executive job, the court found that Stevo was not qualified for the account executive position, and therefore that he had failed to establish a causal connection between his ADA lawsuit and the decision not to hire or promote him. Despite the coincidence of the identical dates of Stoll's and Jackson's letters, the court found that Stevo had failed to establish that Jackson even knew of his ADA suit. Moreover, given the conclusion that Stevo did not have a disability under the ADA, the court found that he was not so severely injured that the only way for him to obtain employment was by obtaining an advanced degree. Therefore the court found that Stevo had failed to establish that the decision not to sponsor him for the Kellogg program was an adverse employment action.
 
 ANALYSIS
 
 12
 Stevo appeals only the district court's grant of summary judgment on his retaliation claims.
 
 
 13
 We review de novo a district court's entry of summary judgment. Talanda v. KFC Nat'l Management Co., 140 F.3d 1090, 1095 (7th Cir.1998). The district court's decision to grant summary judgment should be upheld "when the record reflects no genuine issue of material fact and the moving party ... is entitled to judgment as a matter of law." Id. The record is to be examined in the light most favorable to Stevo, but "our indulgence extends no further than the record before us," Davidson v. Midelfort Clinic, Ltd., 133 F.3d 499, 505 (7th Cir.1998), and conclusory allegations will not suffice. Fisher v. Wayne Dalton Corp., 139 F.3d 1137, 1140 (7th Cir.1998).
 
 I. The Account Executive Position
 
 14
 To succeed on a retaliation claim under the ADA, Stevo must show that the adverse employment action would not have occurred "but for" his employer's motive to retaliate. See McNutt v. Board of Trustees of Univ. of Ill., 141 F.3d 706, 707, 709 (7th Cir.1998); cf. O'Connor v. Chicago Transit Auth., 985 F.2d 1362, 1368 (7th Cir.1993) (Stevo must show that "had it not been for the [retaliatory animus], the injury of which [Stevo] complains would not have occurred."). Retaliation, like other discriminatory action, may be established in either of two ways: by direct evidence or by the indirect burden-shifting method of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See, e.g., Helland v. South Bend Community Sch. Corp., 93 F.3d 327, 329 (7th Cir.1996). Under either method, summary judgment is improper if the plaintiff offers evidence from which an inference of retaliation may be drawn.
 
 
 15
 Stevo argues that Stoll's alleged statement on the phone, "I would not touch a person like you ... with you hiring an attorney ..." constitutes direct evidence of a causal nexus between Stoll's retaliatory animus and CSXT's refusal to consider Stevo's application for the account executive position. However, even assuming that Stoll's alleged statement constitutes direct and probative evidence, there is still reason enough to affirm the district court's grant of summary judgment. Stevo has failed to establish a causal connection between Stevo's ADA complaint and the failure to promote him because he has not shown that "but for" his complaint CSXT would have hired him. McNutt, 141 F.3d at 709. CSXT has pointed to an eminently justifiable reason for its decision: Stevo was not qualified for the job. See Veprinsky v. Fluor Daniel, Inc., 87 F.3d 881, 894 (7th Cir.1996). The account executive position required a strong knowledge of the railway industry, an undergraduate degree or equivalent educational experience, at least two years of professional experience in marketing or sales, product/project management experience, excellent analytical or financial skills, experience with customers in structuring and closing of transportation packages, and proven ability to coordinate both internal and external resources. Stevo had an undergraduate degree, a strong knowledge of the railway industry, and analytical and financial skills; but he had none of the other skills required for the position.
 
 
 16
 It is true that CSXT must do more than simply point to possible alternative reasons for not promoting Stevo. In order for summary judgment to be granted, the company's evidence must be "so strong that no rational factfinder could draw the contrary inference that a retaliatory motive played a substantial role in the decision," Veprinsky, 87 F.3d at 893 (7th Cir.1996); the evidence must eliminate "any doubt as to whether [retaliation] played at least a motivating role in [the refusal]." Venters v. City of Delphi, 123 F.3d 956, 974 (7th Cir.1997). As for Stevo, he must do more than show that the protected conduct played a minor role in the decision not to promote him. O'Connor, 985 F.2d at 1368. He does not have to show that the protected conduct was the sole motive, or even the dominant or primary one, for the decision. Id. Nevertheless, he has to show that "had it not been for the violation, the injury of which he complains would not have occurred ..." Id.
 
 
 17
 CSXT has shown, and Stevo does not contest, that Stevo satisfied only three of the seven requirements for the account executive position. Thus, Stevo was largely unqualified for the job. Stevo claims that his qualifications are simply irrelevant, because Stoll's statement directly suggests that a retaliatory animus led to a failure to consider Stevo for the position. But Stevo cannot defeat summary judgment if CSXT proves by a preponderance of the evidence that it would not have promoted Stevo "even if it had not allowed [Stoll's motivation] to play a role in the decision." McNutt, 141 F.3d at 706; see Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). Moreover, Stevo is not entitled to injunctive relief, attorney's fees, or costs. McNutt, 141 F.3d at 709.
 
 II. The Kellogg Graduate Program
 
 18
 With respect to CSXT's refusal to sponsor Stevo's participation in this program, the district court held that Stevo had failed to establish either that the decision was an "adverse employment action," or that there was any causal connection between the decision and Stevo's ADA suit against CSXT. Stevo argues (1) that the decision was an adverse employment action because it deprived him of a "benefit that he sought pursuant to his employment," and (2) that the coincidence of the dates of Stoll's and Jackson's letters is prima facie evidence of the requisite causal connection.
 
 
 19
 Stevo's evidence of a retaliatory animus is circumstantial. This court analyzes such claims "using the 'familiar McDonnell Douglas burden shifting analysis.' " Gleason v. Mesirow Fin., 118 F.3d 1134, 1146 (quoting McKenzie v. Illinois Dept. of Transp., 92 F.3d 473, 483 (7th Cir.1996)). This means that Stevo bears the initial burden of making out a prima facie case of retaliation; if he does establish that prima facie case, the burden of production then shifts to CSXT to " 'come forward with a legitimate, non-retaliatory reason for its actions.' " Id. (quoting McKenzie, 92 F.3d at 483). If, in turn, CSXT does come forward with a non-retaliatory reason, "the burden shifts back to the plaintiff to demonstrate that [his] employer's proffered reasons for terminating [him] were pretextual." Id.
 
 
 20
 In order to demonstrate a prima facie case of retaliation under the ADA (as under Title VII) an employee " 'must establish that (1) he engaged in statutorily protected expression; (2) he suffered an adverse action; and (3) there is a causal link between the protected expression and the adverse action.' " Talanda, 140 F.3d at 1095 (quoting Roth v. Lutheran Gen. Hosp., 57 F.3d 1446, 1459 (7th Cir.1995)). Although causality may mean merely that "the protected activity and the adverse action were not wholly unrelated," Hunt-Golliday v. Metropolitan Water Reclamation District, 104 F.3d 1004, 1014 (7th Cir.1997), Stevo must still demonstrate that CSXT "would not have taken the adverse action 'but for' the protected expression." Gleason, 118 F.3d at 1146 (internal citation omitted).
 
 
 21
 Stevo's arguments fail. CSXT sponsors advanced degree programs only for employees whose physical capabilities were so limited that an advanced degree program provides the only possible way they can obtain gainful employment. While jobs outside of Chicago may not be to Stevo's liking, Stevo has failed to establish that the severity of his injury, rather than his desire for convenience, prevented him from accepting such jobs. Cf. Dalton v. Subaru-Isuzu Automotive, Inc., 141 F.3d 667, 675 (7th Cir.1998) (to establish disability, "it is not enough to show minor inconvenience[.]"). Stevo simply failed to investigate those job opportunities despite CSXT's recommendation. Furthermore, he was released to return to work, albeit in a lighter-duty position, in April 1994. Thus, Stevo has failed to establish that the acquisition of an advanced business degree was the only possible means through which he could obtain employment. It follows that Stevo was simply not entitled to the "benefit" that he sought.
 
 
 22
 With respect to the coincidence of dates, even if Stoll did instigate Jackson to refuse to sponsor Stevo for the Kellogg program, in this context too CSXT has come forward with a "legitimate, non-retaliatory reason" for its actions: Stevo did not meet the criteria applied by CSXT when deciding whether to sponsor an employee for an advanced degree program. Since Stevo has failed to establish that the acquisition of an advanced business degree was the only possible means through which he could obtain employment, or to demonstrate that CSXT's non-retaliatory reason was pretextual, he has failed to raise a genuine issue of material fact as to whether CSXT refused to sponsor him in retaliation for his filing an ADA suit.
 
 CONCLUSION
 
 23
 The district court properly granted summary judgment to CSXT on Stevo's claims of retaliation. Accordingly, the district court's judgment is
 
 
 24
 AFFIRMED.