**In the Matter of: David M. BAGDADE, Respondent.**

**No. D–02–0001.**

United States Court of Appeals, Seventh Circuit.

Submitted Jan. 29, 2003.

Decided Feb. 12, 2003.

Before COFFEY, EASTERBROOK, and MANION, Circuit Judges.

PER CURIAM.

David M. Bagdade represented Judy Thiel in a suit filed under 42 U.S.C. § 1983. Bagdade did essentially nothing to assist his client, and the case was dismissed for want of prosecution after he failed to serve the defendants with process and missed five consecutive status conferences. (Thiel likewise failed to appear; Bagdade had not told her about the conferences.) Bagdade filed an appeal; our order of affirmance is attached as Appendix A. In addition to making frivolous arguments, Bagdade (a) filed a false certificate of service and failed to serve the brief on his adversary until (in response to the adversary's demands) this court directed him to do so; (b) failed to include in the appendix all of the materials required by Circuit Rule 30 (although he falsely certified that he had complied with that rule); (c) relied on an unpublished order of this court, despite the prohibition in Circuit Rule 53(b)(2)(iv)(A); and (d) made several

false or misleading statements of fact. Our order appointing a special master (Appendix B) and the Master's report (Appendix C) provide the details.

 Bagdade's conduct led the appellees to seek sanctions, which in turn led us to inquire whether he had been sanctioned before. We could not learn the answer, because Bagdade did not appear to be a member of either our bar or the Illinois bar, although he practices in Illinois. He was not on the master list of either the Illinois or the Seventh Circuit Bar, and his name does not appear in Martindale–Hubbell or Sullivan's Law Directory. Our Master concluded, after an evidentiary hearing, that Bagdade has never been a member of this court's bar and thus engaged in the unauthorized practice of law not only in Thiel's case but also in an earlier appeal. Bagdade testified that he applied sometime in summer 1997 but did not keep a copy of the application and cannot find a certificate of admission. Inexcusable sloppiness is the best face one can put on this; perjury is the worst. We checked our records for the months June through September 1997 and could not find an order admitting Bagdade during that period. He also is not in the computer database of our bar's members. Moreover, the Master concluded (and Bagdade has admitted) that when *Thiel* was argued Bagdade was not authorized to practice in Illinois. Bagdade had failed to remit his dues, so between February 1, 2002, and March 31, 2002, he was forbidden to practice. An attorney need not belong to any particular state's bar to practice in federal court—if the attorney has been *admitted* to the federal court's bar, which Bagdade had not. Because he was not in good standing in Illinois, and does not claim to be a member of any other state's bar, he would not have been allowed to practice in this court *pro hac vice.*

What is more, the Master concluded that Bagdade lied in the certificate of service and attempted to deceive this court—not only by representing that he had not received notice of the status conferences (although he had been in court when the date of the first was set) but also by stating that he voluntarily dismissed the second case filed on Thiel's behalf (actually it had been dismissed by the judge as barred by claim preclusion). In an effort to evade responsibility for his acts, the Master found, Bagdade committed perjury in at least two respects during the evidentiary hearing. First, Bagdade falsely testified that he sent a letter to the court indicating that Thiel was not going to prosecute the second case; the Master concluded that this testimony was untruthful. (Bagdade was unable to submit a copy of the purported notice, and none was to be found in the district court's files.) Second, after filing false certificates of service, Bagdade lied on the stand about when he served the appellees. The Master wrote:

> [I]n addition to filing and never correcting the false certification, Bagdade testified falsely in the evidentiary hearing that he had served the appellant's brief on September 26, 2001. Furthermore, he has no proof other than his own testimony that he served the brief on October 18, 2001, which this court as special master concludes is not credible.

The Master recommended substantial sanctions. Bagdade had, but did not avail himself of, an opportunity to respond, so the matter is ready for decision.

 We accept the Master's report and will implement the sanctions she proposes, with some supplemental details. Because Bagdade is not a member of our bar, he cannot be disbarred or otherwise disciplined under Fed. R.App. P. 46(b). But we can and do hold him in civil contempt of court for engaging in the unau-

thorized practice of law, making false representations to us, and testifying falsely under oath before the Master. The following sanctions (which have the status of an injunction, to the extent they require Bagdade to act in specific ways) are in order for prosecuting a frivolous appeal, see Fed. R.App. P. 38, for violating this circuit's rules, and for contempt of court:

1. Bagdade must reimburse the appellees in *Thiel* for their costs and reasonable attorneys' fees. (The appellees have 14 days to file statements of these costs and fees.)

2. Bagdade must not again attempt to practice law in this court without being admitted to its bar. He must immediately notify any client he may have in any pending or impending appeal that he is not authorized to practice in this court. We will not accept from Bagdade an application for admission to our bar before July 1, 2005, and any application after that date must be accompanied by (a) a copy of this opinion and appendices, (b) proof that Bagdade has successfully completed a course in professional ethics, and (c) proof that he is in good standing in every other bar to which he has been admitted.

3. Bagdade is fined $1,000, payable immediately to the Clerk of this Court, in partial recompense of the expenses that his conduct has imposed on the judiciary.

4. The Clerk of this Court will send copies of this opinion (with appendices) to the Attorney Registration and Disciplinary Commission of Illinois and to the Clerk of the United States District Court for the Northern District of Illinois (whose bar Bagdade joined in 1989). Bagdade must send copies of the opinion and appendices to every other court in which he has ever engaged in practice, whether or not admitted to its bar.

5. The Clerk of this Court will send copies of this opinion and appendices to the United States Attorney for the Northern District of Illinois, and the State's Attorney for Cook County, in light of the unauthorized practice of law and perjury that the Master found to have been committed.

6. Bagdade must send copies of this opinion and appendices to his former client Judy Thiel.

7. Before undertaking to represent any other client in any federal court, Bagdade must furnish the prospective client with copies of this opinion and its appendices. We do not have the authority to exclude him from the bar of any court other than our own, but we think it essential—in light of Bagdade's pattern of dissimulation—to ensure that he does not bamboozle additional clients. Federal courts have a strong interest in ensuring that participants in litigation know how the person proposing to represent their interests has treated a former client, and the judicial system.

## Appendix A

Judy A. THIEL, Plaintiff–Appellant,

v.

David A. BECKER, et al., Defendants–Appellees.

No. 01–1554

Decided March 8, 2002

Argued March 5, 2002

Appeal from the United States District Court for the Northern District of Illinois,

Eastern Division. No. 00 C 1243—Harry D. Leinenweber, *Judge.*

Before Hon. JOHN L. COFFEY, Circuit Judge Hon. FRANK H. EASTERBROOK, Circuit Judge Hon. DANIEL A. MANION, Circuit Judge

### Order

Judy Thiel and her lawyer, David M. Bagdade, failed to appear at five consecutive status conferences in Thiel's suit under 42 U.S.C. § 1983 alleging wrongful arrest. The district court dismissed the suit for want of prosecution. Three months later, Thiel filed a motion under Fed.R.Civ.P. 60(b) asking the judge to reinstate the suit. After ascertaining that Bagdade lacked a good reason for failure to appear—he blamed all problems on his law firm's receptionist and conceded that he failed to check the district court's docket even though Thiel had implored him to do so—the district court denied the motion. Bagdade stated that the three-month delay in seeking to reinstate the case occurred because he initially thought that he could simply file a new suit. That was a feeble excuse indeed; the new suit (No. 00 C 6988) was dismissed on the ground of claim preclusion (res judicata), because a dismissal for failure to prosecute "operates as an adjudication upon the merits." Fed.R.Civ.P. 41(b). Bagdade tried again with a motion under Rule 59(e), and the judge held another hearing. This time the judge learned that Bagdade had done absolutely nothing to prosecute the suit— had not, for example, served the defendants with summons and a copy of the complaint during the seven months that the case had been pending, despite the 120–day limit in Fed.R.Civ.P. 4(m)—and again denied the motion.

These facts show that Thiel has the makings of a malpractice action against Bagdade, who failed to prosecute her suit in a minimally competent manner. A lawyer must arrange for the receipt of and action on notices from the court and may not palm off failings on his receptionist, see *Pioneer Investment Services Co. v. Brunswick Associates L.P.,* 507 U.S. 380, 398, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993); too, the receptionist could not have been responsible for Bagdade's failure to check the district court's docket, his failure to effect service, or his absurd belief that a dismissal for failure to prosecute could be ignored and a new case commenced. See *Robb v. Norfolk & Western Ry.,* 122 F.3d 354, 360 (7th Cir.1997); *Schlessinger v. Salimes,* 100 F.3d 519, 522 (7th Cir.1996). No court need tolerate failure to appear at five consecutive status conferences; nor is it appropriate to transfer to defendants the costs of continual appearances made pointless by their adversary's absence. It would have been within the district court's discretion to reinstate the suit if Bagdade had volunteered to reimburse the defendants for the costs (including legal fees) incurred to date, but no such offer was made. The district judge did not abuse his discretion by declining to reinstate this suit.

AFFIRMED

### Appendix B

In the Matter of David M. BAGDADE, Respondent.

No. D-02-0001.

Attorney Disciplinary Proceeding.

Before Hon. John L. Coffey, Circuit Judge, Hon. Frank H. Easterbrook, Circuit Judge, and Hon. Daniel A. Manion, Circuit Judge.

### Order

On the authority of Fed. R.App. P. 38 and 46, the court hereby opens a proceeding to determine whether David M. Bag-

dade should be disciplined for filing a frivolous appeal and other conduct unbecoming a member of the bar.

The nature of the appeal (No. 01–1554) that gives rise to this proceeding is set out in the court's dispositive order, issued today. Succinctly stated, the situation is this: Bagdade's errors led to the dismissal of his client's case for want of prosecution, and he then took an appeal that must be classified as frivolous, in the objective sense that it had no hope of success. See *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 938 (7th Cir.1989) (en banc). In the course of prosecuting this appeal, Bagdade violated this court's rules. For example, he neglected to include with his brief a copy of the district court's order denying his motion for reconsideration under Rule 59(e), although Circuit Rule 30 requires its inclusion—and although Bagdade certified to the court that he had complied with this requirement. See Circuit Rule 30(d). Moreover, although Circuit Rule 53(e) forbids citation to any unpublished order when the rendering court does not allow citation, Bagdade relied on an unpublished order of this court, which does not allow such citations. See Circuit Rule 53(b)(2)(iv).

On occasion the court overlooks such shortcomings—though it is less likely to do so when the appeal is frivolous and continues a pattern begun in the district court. See *Day v. Northern Indiana Public Service Corp.*, 164 F.3d 382, 385 (7th Cir.1999). But it is impossible to overlook the violations here, because a more serious problem occurred. Bagdade's appellate brief contains a certificate of service (over his signature) representing that copies of the brief were served by first class mail "before 5:00 p.m. on this 20th day of September, 2001." This certificate is false. Appellees moved to dismiss

the appeal for lack of service. In response Bagdade conceded that he had not served the brief on September 20 but contended that he had done so on October 18. He asserted that he did not want to serve the brief until assured that this court would accept it. That is no excuse for making a false certificate; Bagdade did not state that he will serve some time in the future. He stated unconditionally that he *had* served the brief. No quibble can justify that falsehood. Nor is his excuse substantively acceptable; attorneys must furnish their adversaries with copies of any paper "presented for filing" and may not wait to see what the clerk's office does. Fed. R.App. P. 25(b), (d)(1).

What is more, Bagdade's assertion that he served the brief by regular mail on October 18, and again by certified mail on November 8, has been contested. Appellees contend that they did not receive anything on either occasion, but did receive copies in the second half of November bearing a postmark of November 16, 2001. Whether Bagdade served anything on October 18 and November 6, or whether instead he has tried to cover up one falsehood with another, is an issue that may require an evidentiary hearing to resolve.

Appellees' request for sanctions led us to check our records to see whether Bagdade had been sanctioned in the past. We could not verify that Bagdade is a member of our bar. His name does not appear on the electronic list of attorneys admitted to practice. This is not conclusive; as a result of an error in software some attorneys who changed their addresses before the middle of 1999 were deleted from the computer database. We could check the paper records, but only if Bagdade supplies the date of his admission to our bar. Failure to find Bagdade's name on the roll of attorneys admitted to practice here led us to check his status in Illinois (where he

practices); to our surprise, he is not on the master roll maintained by the Attorney Registration and Disciplinary Commission. At oral argument Bagdade stated that this might have occurred because his firm had neglected to keep his dues current. Yet in Illinois a lawyer who is not current on his dues is removed from the rolls and is forbidden to practice.

We give Bagdade 21 days to demonstrate that he is a member of this court's bar and, if he is now a member in good standing of our bar (and that of Illinois), to explain why he should not be subject to professional discipline up to and including disbarment. His answer, together with a copy of this order and the record in the underlying litigation (including the appellees' motion to dismiss for lack of service and their request for sanctions), will be referred to Magistrate Judge Geraldine Soat Brown, who is hereby appointed as this court's special master to take evidence and make recommendations concerning the appropriate disposition. See Fed. R.App. P. 48.

The master will have all powers described in Rule 48 and should take such evidence (including testimony) as is required to explore the matters we have described, and any related matters that come to the master's attention. The Clerk of the United States District Court for the Northern District of Illinois is appointed our agent for the purpose of issuing summons and taking other related steps deemed advisable by the master. After receiving evidence, the master should make any appropriate findings of fact and recommend a disposition.

After the master has filed her report, the Clerk of this Court will immediately serve Bagdade with a copy. He will have 15 days to file a response in this court.

## Appendix C

### To the Honorable United States Court of Appeals for the Seventh Circuit

### REPORT AND RECOMMENDATION

Geraldine Soat Brown, United States Magistrate Judge.

### INTRODUCTION

Along with its decision in *Thiel v. Becker*, No. 01–1554, 29 Fed.Appx. 404, 2002 WL 398546 (7th Cir., unpublished order, March 8, 2002), a panel of the Court of Appeals for the Seventh Circuit opened a proceeding pursuant to Fed. R.App. P. 38 and 46 to determine if David M. Bagdade, counsel for the appellant in that appeal, should be disciplined for filing a frivolous appeal and other conduct unbecoming a member of the bar. *In re David M. Bagdade*, No. D–02–0001 (7th Cir., unpublished order, March 8, 2002) (the "Referral Order"). This court was appointed special master to take evidence and make recommendations regarding the issue of discipline and the appellees' motion for sanctions made in the Joint Brief of Appellees at 25–26. *Id.* at 2–3. For the reasons set out below, this court as special master respectfully recommends that Bagdade be disciplined as outlined below, and that appellees' motion for sanctions be granted.

### PROCEEDINGS ON THE REFERRAL

On April 4, 2002, respondent David M. Bagdade filed a response required by the Referral Order. An initial status was set for April 24, 2002, to schedule proceedings on the referral. Bagdade was ordered to appear in person but also permitted to be represented by counsel. (Order, April 12, 2002.) Upon information that Bagdade was no longer at the law firm address listed in the appeal, the initial status was reset for May 1, 2002. (Order, April 24,

2002.). At the initial status, Bagdade appeared, not represented by counsel. An evidentiary hearing was set for July 30, 2002. (Order, May 1, 2002.) On July 30, 2002, Bagdade appeared and orally moved for a continuance of the evidentiary hearing to permit him to retain counsel to represent him. That motion was granted, and the hearing was continued to September 16, 2002. (Order, July 30, 2002.) Bagdade was also ordered to file a written submission by September 9, 2002, responding to the charge that the appeal in *Thiel v. Becker* was frivolous and sanctionable. (*Id.*) The date for the evidentiary hearing was subsequently reset to September 23, 2002. (Order, August 1, 2002.) On September 19, 2002. Bagdade filed a memorandum of law. ("Respondent's Mem.")

The evidentiary hearing was held on September 23, 2002. Bagdade appeared and testified under oath. He was not represented by counsel. He did not present any witnesses on his own behalf, although he did submit an exhibit, as further discussed below. At the conclusion of the hearing, the record was held open until September 30, 2002 for Bagdade to submit any evidence regarding a particular issue, as discussed below. (Order, Sept. 23, 2002.) Bagdade was also permitted to submit a written argument on the issues on the referral, on or before October 15, 2002. (*Id.*)

Bagdade did not submit any further evidence. His motion to extend the time for filing a post-hearing memorandum to October 28, 2002 was granted. (Order, October 16, 2002.) However, he never submitted a post-hearing memorandum or argument.

### FACTUAL FINDINGS AND CONCLUSIONS OF LAW

Bagdade represented plaintiff Judy Thiel in *Thiel v. Becker*, in both the District Court (00 C 1243, N.D. Ill.) and in the Court of Appeals (01–1554, 7th Cir.). The circumstances leading up to the District Court's dismissal of the lawsuit and denial of motions brought by Bagdade under F.R. Civ. P. 60(b) and 59(e), are set out in the Court of Appeals' order affirming the District Court's decision.

On March 7, 2001, Bagdade filed a notice of appeal on behalf of plaintiff-appellant Thiel, appealing from the order entered by the District Court on February 8, 2001 denying the motion brought under Rule 60(b) and the order entered on February 22, 2001, denying the motion to reconsider the February 8, 2001 order. [Dkt # 11.](00 C 1243.) Various issues relating to Bagdade's conduct arose during the course of briefing and argument of the appeal. These issues will be discussed in turn.

1. **There is no evidence that Bagdade was ever admitted to practice in the Seventh Circuit Court of Appeals. Furthermore, Bagdade was not a member of the Illinois bar at the time he argued the appeal.**

Circuit Rule 46(a) of the Seventh Circuit Court of Appeals states, in relevant part:

The lead attorney for all parties represented by counsel in this court must be admitted to practice in this court. Counsel have thirty days from docketing of the matter in this court to comply. In addition, any attorney who orally argues on appeal must be admitted to practice in this court.

7th Cir. R. 46(a) (2002).

As discussed in the Referral Order, the appellees' request for sanctions caused a check to be made concerning Bagdade's admission to the bar of the Seventh Circuit. That check showed that his name did not appear on the list of admitted attor-

neys, and also showed that it did not appear on the master roll of attorneys admitted to practice in Illinois maintained by the Illinois Attorney Registration and Disciplinary Commission. (Referral Order at 2.) Bagdade was ordered to demonstrate within 21 days that he was a member of the bar of the Seventh Circuit. (*Id.*) During the course of the argument in the *Thiel* case on March 5, 2002, at the request of the Court, Bagdade informed the Court that he had evidence of his 2001 membership in the Illinois bar, but was unable to produce evidence of membership for the year 2002.

Bagdade has not submitted any evidence that he was ever admitted to practice before the Seventh Circuit. In his Response filed on April 4, 2002, he stated that his belief that an application was submitted on his behalf in the summer of 1997, but also stated that he is unable to verify his admission. (Resp. of Respondent at 5.) At the September 23, 2002 evidentiary hearing, he testified that he had no additional evidence to submit that he had been admitted to the Seventh Circuit bar on March 5, 2002 when he argued the appeal in *Thiel v. Becker*, or at the time that he argued a previous appeal to the Seventh Circuit in *Stevo v. CSX Transportation, Inc.*, 151 F.3d 1033 (table), 1998 WL 516788 (7th Cir., unpublished order, July 27, 1998) on July 7, 1998. (Tr. Sept. 23, 2002 at 4–5.) He testified that he thought he filled out an application, but he has no evidence that

it was ever submitted. (*Id.* at 5.) He did not recall receiving a certificate of admission. (*Id.* at 6.) He testified that he took no steps to verify his admission prior to arguing the *Stevo* case or the *Thiel* case. (*Id.* at 5.)

In his Response, Bagdade also admitted that his license fee for 2002 to practice in Illinois had not been paid as of March 5, 2002, the date of his argument to the Seventh Circuit in *Thiel v. Becker*. (Resp. of Respondent at 4.) However, he stated that he paid his license fee immediately thereafter and was reinstated pursuant to Illinois Supreme Court Rule 756(e). (*Id.*) Bagdade included with his Response a letter of good standing from the Attorney Registration and Disciplinary Commission stating that, as of April 1, 2002, he was registered on the master roll of attorneys licensed to practice in Illinois and is in good standing.[1] However, Bagdade was not a member of the Illinois bar at the time he argued the *Thiel* case. Illinois Supreme Court Rule 756(b) establishes a master roll of attorneys licensed to practice law in Illinois. Attorneys who have not registered and paid their registration fee for the year are removed from the master roll on February 1st of each year. Ill. S.Ct. Rule 756(e). As Bagdade observes, Rule 756(f) provides that an attorney whose name has been removed for failure to pay the fee may be reinstated upon payment.[2] However, persons not listed on the master roll who practice law

---

**1.** Although not strictly relevant to the present issues, Bagdade also submitted to this court a Certificate of Good Standing from the Clerk of the United States District Court for the Northern District of Illinois dated July 16, 2002, stating that Bagdade was admitted to practice in the District Court for the Northern District of Illinois on December 20, 1989 and is in good standing.

**2.** Subsection (f) of Rule 756 provides:

An attorney whose name has been removed from the master roll solely for failure to register and pay the registration fee may be reinstated as a matter of course upon registering and paying the registration fee prescribed for the period of his suspension, plus the sum of $10 for each month that such registration fee is delinquent.

Ill. Sup.Ct. R. 756(f) (2002).

are "engaged in the unauthorized practice of law and may also be held in contempt of the court." Ill. S.Ct. Rule 756(e). As of March 5, 2002, when he argued the *Thiel* case, Bagdade had not paid his fee and, pursuant to Rule 756, his name had been removed from the master roll a month earlier.

Thus, the evidence establishes that Bagdade violated Circuit Rule 46(a) twice by acting as lead counsel and arguing appeals to the Seventh Circuit in two separate cases without being admitted to the bar of the Seventh Circuit. It also establishes that Bagdade was not licensed to practice law in Illinois on March 5, 2002, the day that he argued the appeal in *Thiel v. Becker.*

## 2. Bagdade violated Circuit Rules in his filings with the Court of Appeals.

The Referral Order also discussed various ways in which Bagdade's filings with the Court of Appeals in *Thiel v. Becker* failed to comply with Circuit Rules. (Referral Order at 1–2.) As discussed below, additional concerns appeared in the course of this referral. Some of these are more serious than others. Cumulatively, they present a disquieting picture.

First, Bagdade filed a false Circuit Rule 30 certification stating that he had included in the appendix attached to his appellate brief "all of the materials required by Circuit Rule 30(a) and (b)." (Br. and App. Pl.-Appellant at 20.) In fact, the District Court's order denying his motion for reconsideration was omitted from the appendix. Bagdade states that the omission was inadvertent. (Resp. of Respondent at 2.)

Second, Bagdade cited and quoted an unpublished order, *Parsons v. City of Aurora,* 2000 U.S.App. LEXIS 16237 (7th Cir., unpublished order, June 16, 2000), as authority in the appellant's brief (at 9–10) in violation of Circuit Rule 53(b)(2)(iv). At the evidentiary hearing, Bagdade submitted a copy of the printout of that order as published by the LEXIS service. (Tr. Sept. 23, 2002 at 21.) That printout was admitted as Respondent's Exhibit 1. (*Id.* at 21–22.) The printout states on the first page, "NOTICE: Rules of the Seventh Circuit Court of Appeals may limit citations to unpublished opinions. Please refer to the rules of the United States Court of Appeals for this Circuit." (Resp. Ex. 1 at 1.) Bagdade testified that he did not see "any other indication in this document that it is in fact a non-published opinion." (Tr. Sept. 23, 2002 at 21.) He also testified that he did no investigation to see whether it was a published opinion. He admitted that he cited to the order using the Lexis citation, and that the absence of a Federal Reporter citation should have triggered further investigation regarding whether the order was unpublished. (Tr. Sept. 23, 2002 at 23.)

In addition to that admission, a review of Respondent's Exhibit 1 demonstrates that Bagdade knew or should have known that the order was unpublished and that its unpublished status had consequences. The warning on the first page should have put Bagdade on notice that there was a possibility that the decision was an unpublished order, otherwise the warning is pointless. Also, the printout describes the court's disposition as **"OPINION: ORDER."** (Ex. 1.) This was a further red flag, because pursuant to Circuit Rule 53(b), "orders shall not be published." 7th Cir. R. 53(b) (2002). Bagdade failed to use appropriate care and disregarded these warnings in citing and quoting the order in *Parsons v. City of Aurora.*

Third, Bagdade made a false statement in the appellant's brief regarding the dis-

missal of the second action that he erroneously filed on behalf of Thiel after first action was dismissed. In the appellant's brief, Bagdade stated in a footnote:

> On November 6, 2000, shortly after learning of the dismissal, Plaintiff refiled her Complaint, which second action was numbered 00 C 6988. After Defendants moved to dismiss the said re-filed complaint, *Plaintiff nonsuited the second action.*

(Br. and App. Pl.-Appellant at 3, emphasis added.) The record in case No. 00 C 6988 does not reflect any "non-suit" by the plaintiff. On the contrary, the docket shows that, following motions to dismiss by the defendants, the District Court dismissed the case *sua sponte* on *res judicata* grounds. [Dkt ## 5, 6, 8.](00 C 6988.) That history is consistent with the hearing on plaintiff's Rule 60 motion before Judge Leinenweber in case No. 00 C 1243. At that hearing, Bagdade did not suggest that he had sought to dismiss the erroneously filed case. Rather he stated, "[Y]our Honor will recall that we filed a new action, which counsel moved to dismiss." (Tr. Feb. 8, 2001 at 4.) When asked at the evidentiary hearing about the statement in the appellant's brief, Bagdade testified that he sent "a letter by fax to [the District Court Judge's] minute clerk indicating that we were not going to proceed on the second complaint." ( Tr. Sept. 23, 2002 at 18.) Bagdade testified that he may have retained a copy of the letter but that he had not brought his correspondence file to the hearing. (*Id.* at 19.) At the conclusion of the evidentiary hearing the record was held open until September 30, 2002 to allow Bagdade to submit the letter or any other evidence in support of the statement in the appellant's brief. (*Id.* at 24–25.) Neither the letter nor any other evidence was submitted. The docket in case No. 00

C 6988 does not reflect any such letter. This court as special master concludes that the statement in the appellant's brief that "Plaintiff nonsuited the second action" was false, as was Bagdade's testimony in the evidentiary hearing that he had sent a letter to the court indicating that the plaintiff was not going to proceed on case No. 00 C 6988.

Fourth, the argument in the appellant's brief in *Thiel* was less than candid in an attempt to justify the failure to appear at the status hearings held by the District Court. In the appellant's brief, Bagdade stated that "[p]laintiff's counsel's office never received notices of status calls in this matter, nor did counsel receive notice of the dismissal of this case." (Br. and App. Pl.-Appellant at 8.) In fact, Bagdade was personally present in court when the date was set for the first of the missed status hearings. (Tr. May 24, 2000 at 3.) Thus, Bagdade had actual, personal notice of the July 7, 2000 status hearing, but failed to appear. The fact that Bagdade was present when the July 7, 2000 date was set is acknowledged in the appellant's brief in the statement of the case (Br. and App. Pl.-Appellant at 2.), but that fact is not mentioned in the argument. At the evidentiary hearing Bagdade stated that in the argument he was referring only to "the subsequent calls after July 7th" (Tr. Sept. 23, 2002 at 15.) He confirmed also that his office received notice of the July 7, 2000 status. (Tr. Sept. 23, 2002 at 11.) He acknowledged that the order setting the July 7, 2000 date was in his file. (*Id.* at 14–15.)

Fifth, Bagdade admits that he signed and filed a false certificate of service as part of the appellant's brief, in violation of Fed. R.App. P. 25(d). Furthermore, he has made false statements about when he actually did serve the brief.

Federal Rule of Appellate Procedure 25 requires that all papers filed with court be served upon all parties to the appeal and that papers presented for filing include a proof of service certifying the date, manner and method of service. Fed. R.App. P. 25 (2002). Bagdade has admitted that the Certificate of Service filed as part of the appellant's brief, stating that the brief was served by mail before 5:00 p.m. on September 20, 2001, was untrue. (Tr. at Sept. 23, 2002 at 7.) As mentioned in the Referral Order, it is not clear when the brief was actually served. (Referral Order at 1.) Bagdade never filed a corrected certificate of service. (Tr. at Sept. 23, 2002 at 8.) On October 10, 2001, when appellees' counsel had not received a copy of the appellant's brief, that counsel filed a motion asking for an order compelling Bagdade to serve a copy of the appellant's brief. (Mot. Appellees Becker, Lescher and Village of Fox Lake to Compel and Extend Time, filed October 10, 2001.) In its ruling on the motion, the Court of Appeals reminded Bagdade of his obligation to serve opposing counsel with copies of all papers filed with the court. (Order, Oct. 12, 2001.) A subsequent joint motion was filed by the appellees in which counsel for the appellees state that neither counsel had received the brief by October 29, 2001. (Appellees' Joint Mot. Strike Appellant's Br. at 2.) On November 9, 2001, in response to that motion, Bagdade stated that he provided service on October 18, 2001, a day after he received an order by the Court of Appeals to serve the brief. (Resp. Pl.-Appellant to Joint Mot. Strike Brief at 2.) In that response, Bagdade also stated that he spoke with counsel for the defendants on September 26th but only informed them "that he was waiting for the brief to be approved," presumably by the clerk's office. (*Id.* at 1.) Upon receiving a copy of the brief back from the Clerk

on October 3, 2001, he discovered that it was stamped September 26 rather than September 20, implying that he further delayed in providing service. (*Id.*) He stated that he served the brief on October 18, 2001, the day after he received the Court of Appeals' order ordering him to provide service. (*Id.* at 2.) He also stated that he served additional copies concurrently with that response (*i.e.*, on November 9, 2001). The appellees assert that they received only one copy of the brief, postmarked November 16, 2001. (Joint Br. Appellees at 25.)

In the Referral Order, the Court questioned whether Bagdade's representation that he served the brief on October 18, 2001 was true. (Referral Order at 2.) In his Response filed on April 4, 2002, Bagdade stated that he attempted to file the appellant's brief on September 20, but it was rejected as deficient by the Clerk of the Court. (Resp. of Respondent at 2–3.) Bagdade stated that he refiled a corrected brief on September 26, 2001, and also stated that he sent a copy of the brief to opposing counsel on or about October 18, after receiving a call from opposing counsel stating that the brief had not been received. (*Id.* at 3.) The Response thus implies, although it does not explicitly state, that he served the brief *prior* to October 18. (*Id.*) At the evidentiary hearing, Bagdade was asked whether October 18, 2001 was the first date that the brief was served. (Tr. Sept. 23, 2002 at 7–8.) He answered by stating that he called the opposing counsel on September 26, 2001 and told that counsel that the brief would be resubmitted that date. (*Id.* at 8.) Bagdade testified, "The brief was in fact accepted on that date [September 26], and as I have indicated the—I did sent copies of the brief out that day." (*Id.*)

When questioned, Bagdade could not explain the inconsistency between his testi-

mony at the evidentiary hearing that he served the brief on September 26, 2001, and his statement in the Response filed on November 9, 2001 that he served the brief on October 18, 2001. (Tr. Sept. 23, 2002 at 9–10.) It appears that the earliest Bagdade served the brief was October 18, 2001, and even that is questionable in light of the fact that neither appellees' counsel received a copy of the brief prior to October 26, 2001, prompting the filing of the second motion. Bagdade's only evidence of service is his own recollection, which he admitted might be faulty. (*Id.* at 10.)

This court as special master concludes that, in addition to filing and never correcting the false certification, Bagdade testified falsely in the evidentiary hearing that he had served the appellant's brief on September 26, 2001. Furthermore, he has no proof other than his own testimony that he served the brief on October 18, 2001, which this court as special master concludes is not credible.

### 3. Sanctions are appropriate under Fed. R.App. P. 38.

The Court of Appeals has determined that the appeal that Bagdade filed in *Thiel* was frivolous. (Referral Order at 1.) Federal Rule of Appellate Procedure 38 provides:

If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee.

Fed. R.App. P. 38 (2002). Under the rule, the court first determines if the appeal in question was frivolous. An appeal is frivolous if the result is foreordained by the lack of substance to the appellant's arguments. *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928,

938 (7th Cir.1989). If the court finds the appeal was frivolous, the court has the discretion to award sanctions or to decline to award sanctions. *Id.*

In deciding whether to impose sanctions "courts look for an 'indication of the appellant's bad faith suggesting that the appeal was prosecuted with no reasonable expectation of altering the district court's judgment and for purposes of delay or harassment or out of sheer obstinacy.'" *Spiegel v. Continental Illinois Nat'l. Bank,* 790 F.2d 638, 650 (7th Cir.1986) (quoting *Reid v. United States,* 715 F.2d 1148, 1155 (7th Cir.1983)). For example, an appeal of a credibility finding that does not point to documentary or other objective evidence contradicting the credibility finding is frivolous and subject to Rule 38 sanctions when it comes at the end of a lawsuit based on fraud. *Rumsavich v. Borislow,* 154 F.3d 700, 702 (7th Cir.1998). The Seventh Circuit has also held that "the combination of frivolous legal arguments . . . and frivolous factual arguments . . . appear to warrant the imposition of sanctions" under Circuit Rule 38. *Smith v. Blue Cross & Blue Shield United of Wisconsin,* 959 F.2d 655, 661 (7th Cir. 1992).

In the present situation, this court as special master finds that sanctions are appropriate, for a number of reasons. First, the lack of substance to the appellant's arguments for reversal of the District Court's decision is apparent from a review of the appellant's brief. The appellant's brief submitted by Bagdade to the Court of Appeals was substantially the same as the Memorandum of Law in Support of Plaintiff's Rule 60(b) Motion that had been filed with the District Court. [Dkt # 5.] In fact *all* the substantive text of that Memorandum of Law is contained in the appellant's brief with the order of the paragraphs slightly changed, with lim-

ited additional text (primarily a discussion of the unpublished order in *Parsons v. City of Aurora* and one other published opinion). Rather than structuring an argument to demonstrate that the District Court's decision was an abuse of discretion, Bagdade essentially reargued the motion made in District Court, a tactic which could not hope to succeed on appeal. "When an appeal rehashes positions that the district court properly rejected ... the appeal is frivolous." *Berwick Grain Co., Inc. v. Illinois Dept. of Agriculture*, 217 F.3d 502, 505 (7th Cir.2000) (citations omitted). As the Court of Appeals stated in the decision, it would have been within the District Court's discretion to reinstate Thiel's lawsuit if Bagdade had offered to reimburse the defendants for the costs and fees incurred to date, but the appellant did not demonstrate that it was an abuse of discretion for the District Court to decline to reinstate the lawsuit. *Thiel v. Becker*, 29 Fed.Appx. 404, 2002 WL 398546, at *1. The text of the appellant's brief supports the conclusion that minimal effort was made to consider what was needed to succeed on appeal in a case where the standard for reversal was abuse of discretion.

Second, the other problems with the brief described above—factual misstatements, a false certificate of service, and a false certification of compliance with Circuit Rule 30—also support the conclusion that the appeal was a perfunctory effort, filed not with serious hope of success but rather to delay the consequences of the dismissal of the underlying lawsuit. Furthermore, the various rule violations might individually be the basis for sanctions; cumulatively, and considered in conjunction with the frivolous arguments, they support the imposition of sanctions here.

For example, Bagdade's failure to include in the appendix to the appellate brief a copy of the District Court's order denying the motion for reconsideration, and his false certification that the brief complied with Circuit Rule 30, violated that rule. Circuit Rule 30(a) requires that "[t]he appellant shall submit, bound with the main brief, an appendix containing the judgment or order under review and any opinion, memorandum of decision, findings of fact and conclusions of law, or oral statement of reasons delivered by the trial court." 7th Cir. R. 30(a) (2002). The purpose of the rule is to allow the Court of Appeals to have "all necessary documents before it as it considers the parties' arguments and renders its decision." *Hill v. Porter Memorial Hospital*, 90 F.3d 220, 225–26 (7th Cir.1996). Bagdade argued that his failure to attach a copy of the order was inadvertent, and that no party was prejudiced by the omission of the brief minute order. (Resp. of Respondent at 2.) However, "[t]ransgression of these rules is not a 'nitpicky' violation. Failure to supply necessary documents goes to the heart of this court's decision-making process." *Hill*, 90 F.3d at 226. Sanctions for failure to comply with Rule 30 may include dismissal of the appeal, affirmance of the judgment below, and a fine against the attorney. *Id.* at 226 (collecting cases).

A false Rule 30 certification, in conjunction with the filing of a frivolous appeal, has been considered sufficient to warrant a sanction of costs and attorney's fees under Fed. R.App. P. 38. *Jansen v. Aaron Process Equip. Co., Inc.*, 207 F.3d 1001, 1005–06 (7th Cir.2000); *Collins v. Educ. Therapy Ctr.*, 184 F.3d 617, 622 (7th Cir.1999). The Court of Appeals has emphasized, furthermore, that a violation of Rule 30 "in and of itself is subject to appropriate sanctions." *Collins*, 184 F.3d at 622. Violations of Circuit Rule 30 are also sanctionable under Fed. R.App. 46(c). *Hill*, 90 F.3d at 227. *See also U.S. v. Evans*, 131 F.3d

1192, 1194 (7th Cir.1997) (giving attorney opportunity to show why he should not be subject to the $1000 sanction imposed in *Hill*).

Likewise, false certifications of service are a serious matter, because service of papers on opposing counsel is a critical responsibility of an attorney. In *In re Ksenzowski*, 56 B.R. 819 (Bankr.E.D.N.Y. 1985), an attorney falsely certified that he had provided mail and personal service of a motion. It was later discovered that neither mail nor personal service had been provided and the attorney had simply pushed the motion through the door of opposing counsel's office at 3:00 on New Year's Eve. *Id.* at 836. When confronted with these facts, the attorney stated that he was in a rush and had forgotten to change the standard form of a certificate of service. *Id.* The court stated that this conduct constituted "an absolute contempt for his responsibility as an officer of the court." *Id.* In the present case, Bagdade's false certification was part of a course of conduct in which, by failing to serve the appellant's brief as required, he delayed the resolution of the case and necessitated the filing of two motions by appellees' counsel.

While there appears to be no reported decision dealing with a false certificate of service, the Court of Appeals has severely punished false statements to the Court. *See, e.g., Mays v. Chicago Sun–Times*, 865 F.2d 134, 140 (7th Cir.1989) (fine of $1000 for false representations as to facts of record); *Cleveland Hair Clinic v. Puig*, 200 F.3d 1063, 1066 (7th Cir.2000) (false statements to District Court regarding representation of client; distortion of record by appellate counsel). In *U.S. v. Williams*, 894 F.2d 215, 216 (7th Cir.1990), appointed defense counsel filed an *Anders* brief in which he stated that he had care-fully reviewed the record and determined that any appeal would be meritless. However, subsequent investigation revealed that only half of the trial had been transcribed and that counsel had not requested transcription of the remainder. *Id.* at 216–217. The Court described the lack of transcription as "appalling," and ordered that counsel show cause why he should not be disciplined under Rule 46. *Id.* at 217.

Here, the false certification, the false statement regarding the "non-suit" of the erroneously filed second lawsuit, and the less than forthright argument that the plaintiff had not received notice of the statuses, provide additional support for sanctions.

█ Bagdade's citation of an unpublished order violated Circuit Rule 53(b)(2)(iv) which prohibits citation to unpublished orders except to support a claim of *res judicata*, collateral estoppel, or law of the case. 7th Cir. R. 53(b)(2)(iv) (2002). Generally, sanctions have not been imposed solely for citation to an unpublished order if it appears that the attorney's violation was not willful. *Sorchini v. City of Covina*, 250 F.3d 706 (9th Cir.2001); *Hart v. Massanari*, 266 F.3d 1155, 1180 (9th Cir.2001) ("We therefore conclude that the violation was not willful and exercise our discretion not to impose sanctions."). Bagdade's citation to the unpublished order appears to be better characterized as a reckless rather than a willful violation of Rule 53(b)(2)(iv). By itself, the citation might not justify sanctions, however, it further evidences the lack of care with which Bagdade prosecuted the appeal.

█ Finally, it seems appropriate that the appellees should be reimbursed their attorneys' fees and costs on appeal. As the District Judge stated in denying the motion for reconsideration, Bagdade did nothing to prosecute the lawsuit in the District Court. The appeal appears to

have been a futile attempt to avoid the consequences of that inaction. Furthermore, Bagdade's failure to follow the basic principles such as timely serving the opposing parties caused the appellees to incur fees in calling Bagdade to inquire about the brief and in preparing and filing motions that should not have been necessary. However, in light of the recommendation *below* that a fine be imposed on Bagdade under Rule 46, this court as special master recommends that only single costs, not double costs, be awarded in addition to attorneys' fees.

As required by Rule 38, Bagdade has had the opportunity to argue to this court as special master that sanctions should not be imposed. His Respondent's Memorandum of Law in large part repeats virtually verbatim the same argument made unsuccessfully to the District Court and Court of Appeals, with the addition of a two-page argument that the appeal was not frivolous. (Resp.'s Mem. Law at 8.) Bagdade argues that he cited authority under which the District Court could have granted plaintiff's motion and Court of Appeals could have overturned the District Court's ruling "had it been so inclined." (*Id.* at 9.) The Memorandum of Law overlooks the fact that the Court of Appeals previously determined that the appeal was frivolous, and that the determination is consistent with Seventh Circuit precedent that appeals that merely rehash the arguments in the District Court are frivolous.

As discussed above, Bagdade was offered an additional opportunity at the close of the evidentiary hearing to submit a further argument as to issues of fact or law and the recommendation to be made to the Court of Appeals, and declined to take up that opportunity.

For the foregoing reasons, this court concludes that Bagdade's prosecution of the appeal in *Thiel v. Becker* was both frivolous and accompanied by such indicia of bad faith and failure to comply with the rules governing appeals that sanctions under Rule 38 are appropriate. This court respectfully recommends that the appellees be granted their reasonable attorneys' fees and costs on appeal, and that those costs and fees be assessed against Bagdade personally and not against his client, Ms. Thiel. If the Court adopts the recommendation that appellees be awarded their attorneys' fees and costs, this court as special master further recommends: (a) that the parties be ordered to proceed as required by Local Rule 54.3(d)-(e) of the District Court for the Northern District of Illinois; (b) that Bagdade be ordered to pay any amounts which he does not dispute within 21 days after receiving the information required by Local Rule 54.3(d)(1)-(3) from the appellees' counsel; and (c) that any dispute as to amounts to be paid shall be brought to this court as special master for disposition.

6. **Bagdade's actions constitute conduct unbecoming a member of the Court's Bar.**

Federal Rule of Appellate Procedure 46(c) provides that a court of appeals may discipline an attorney who practices before it for "conduct unbecoming of a member of the bar or for failure to comply with any court rule."[3] Fed. R.App. P. 46(c) (2002). The Supreme Court has stat-

---

3. Rule 46(b) states that a member of a court's bar is subject to penalties up to and including suspension or disbarment if he or she is guilty of "conduct unbecoming a member of the court's bar." Fed. R.App. P. 46(b) (2002). However, since Bagdade has never been a member of the bar of the Seventh Circuit, he can not technically be disbarred or suspended.

ed that "[r]ead in light of the traditional duties imposed on an attorney, it is clear that 'conduct unbecoming a member of the bar' is conduct contrary to professional standards that shows an unfitness to discharge continuing obligations to clients or the courts, or conduct inimical to the administration of justice." *In re Snyder,* 472 U.S. 634, 644, 105 S.Ct. 2874, 86 L.Ed.2d 504 (1985). Conduct unbecoming a member of the bar "has generally been understood to involve significant elements of aggravation, such as deliberately misleading the court or displaying egregious misjudgment." *In re Lightfoot,* 217 F.3d 914, 916 (7th Cir.2000). However negligence is sufficient to constitute conduct unbecoming in cases involving misrepresentations, omissions or failures of inquiry. *Id.* at 917.

■ In the present case, this court as special master concludes that Bagdade's actions, in arguing an appeal at a time when he was neither a member of the Seventh Circuit bar nor of the Illinois bar, and his conduct in the course of the appeal and during the referral, constitute conduct unbecoming a member of the bar.

The Seventh Circuit has, under Rule 46, disciplined lawyers who were not members of its bar and who also engaged in sanctionable conduct by failing to prosecute the appeals of imprisoned clients, by prohibiting them from filing documents with the court and notifying state disciplinary bodies of their conduct. *United States v. Gerrity,* 804 F.2d 1330, 1332 (7th Cir.1986);

*United States v. Song,* 902 F.2d 609, 610 (7th Cir.1990). *See also In re Chas. A. Stevens & Co.,* 108 B.R. 191, 194 (Bankr. N.D.Ill.1989) (noting that the practice of law by a person not licensed is potentially punishable as a contempt of court).

■ In this case, Bagdade's failure to monitor his membership in the Seventh Circuit and Illinois bars was a neglect of his professional duty. Lawyers have an ongoing duty to remain knowledgeable of and abide by their professional responsibilities and "[i]t is a paramount obligation of each member of the bar to study the Code of Professional Responsibility and abide by its terms and principles." *In re Cheronis,* 114 Ill.2d 527, 104 Ill.Dec. 225, 502 N.E.2d 722 (1986); *In re Beck,* 902 F.2d 5, 7 (7th Cir.1990) ("Members of the bar of the Seventh Circuit have an obligation to render competent services.").

At the time of the filing of the notice of appeal in *Stevo v. CSX Transportation* or in *Thiel v. Becker,* Bagdade was presumably qualified for admission to the Seventh Circuit bar and could most likely have secured admission.[4] However, even assuming, *arguendo,* the truth of his testimony that he filled out an application and understood that it would be sent by his office staff, he did not take even the most basic steps to ensure that his application was properly processed.[5] Bagdade failed to keep a copy of his application. When, after filling out an application, he received no confirmation of his admittance, he failed to take any steps to verify his membership. As a result, Bagdade argued two

---

4. To qualify for admission to the Seventh Circuit bar, an attorney must be "a member of the bar in good standing of either the highest court of a state or of any court in the federal system." *Practitioner's Handbook for Appeals to the United States Court of Appeals for the Seventh Circuit* 2002 ed. <www.ca7.uscourts.gov/Rules/handbook.htm>(accessed

Nov. 14, 2002). Attorneys must be sponsored by an already admitted member but there are no lengthy admission requirements and the filing fee is only fifteen dollars. *Id.*

5. As discussed above, Bagdade submitted no evidence other than his own testimony that this was done.

appeals without being a member of the bar of the Seventh Circuit. Finally, Bagdade engaged in the unauthorized practice of law by holding himself out as an attorney after he had been removed from the master roll in Illinois. Although he was carrying a card evidencing his admission to the Illinois bar for 2001, he was apparently unaware until questioned by the Court at the oral argument that he had no evidence of admission for 2002, and that was in the third month of 2002. Bagdade either knew or should have known that he was no longer on the master roll of attorneys licensed to practice in Illinois. Thus, a significant discipline is warranted for this misconduct.

Furthermore, the findings above demonstrate a series of misrepresentations to the Court, continuing with Bagdade's testimony in the evidentiary hearing, that were either knowingly false or made in reckless disregard for the truth. This pattern further warrants discipline.

The extent and severity of improper conduct is a factor considered in the imposition of discipline. In *In re Gubbins*, 890 F.2d 30, 33–34 (7th Cir.1989), an attorney was suspended for three months from the Seventh Circuit bar for a pattern of late filings of briefs including forty motions for extension of time or *instanter* filings, resulting in criticism in five published opinions. In *In re Beck*, 902 F.2d 5, 7 (7th Cir.1990), an attorney was suspended from the Seventh Circuit bar for a minimum of a year for a pattern of incompetency including failure to comply with procedural requirements, and the filing of an appellate brief, in all capitals, with an argument and facts section that totaled less than two pages. In addition he was required to complete a professional education course in appellate advocacy before petitioning for readmission. *Id.* In *Day v.*

*Northern Indiana Public Service Corp.,* 164 F.3d 382, 383–384 (7th Cir.1999), an attorney failed to include citations to the record in both his district and appellate court briefs. Having filed a similar brief in a previous case, the attorney was publicly reprimanded and fined $500 under Rule 38. *Id.* at 385. In *In re Jafree*, 759 F.2d 604, 609 (7th Cir.1985), an attorney, already disbarred by the Illinois Supreme Court, was similarly disbarred by the Seventh Circuit Court of Appeals for unprofessional conduct, including the repeated filing of frivolous actions, often in an improper manner. In *United States v. Ford,* 806 F.2d 769, 770 (7th Cir.1986), an attorney handling a criminal appeal for an imprisoned client was suspended indefinitely and fined $500 for repeated failures to comply with a briefing schedule and the eventual submission of a perfunctory brief.

Consistent with the precedents discussed in this Report, this court as special master recommends the following discipline pursuant to Rule 46:(a) that Bagdade be barred from filing papers with the Court of Appeals for Seventh Circuit and from applying for admission to the bar of the Seventh Circuit for two years; (b) that *any future application he makes for admission to the Seventh Circuit bar must be accompanied by proof that he has successfully completed a course in professional ethics; (c) that Bagdade should be assessed a fine of $1,000; and (d) that a copy of the Court's decision following this Report and Recommendation be forwarded to the Illinois Attorney Registration and Disciplinary Commission and to the equivalent authorities in each of the courts of which he is a member of the bar. It is hoped that such sanctions will impress upon Bagdade, and others who appear before the Court of Appeals, the seriousness with which the Court views his conduct while allowing him eventually to redeem himself.

## CONCLUSION

For the foregoing reasons, this court as appointed special master respectfully recommends that sanctions and discipline be entered against Respondent David M. Bagdade as follows:

A. Pursuant to Fed. R.App. P. 38, that Bagdade be required to pay the appellees in *Thiel v. Becker* their reasonable attorneys' fees and costs; and

B. Pursuant to Fed. R.App. P. 46, that Bagdade be disciplined for conduct unbecoming a member of the bar as follows: (a) that Bagdade be barred from filing papers with the Court of Appeals for Seventh Circuit and from applying for admission to the Seventh Circuit bar for two years; (b) that any future application he makes for admission to the Seventh Circuit bar must be accompanied by proof that he has successfully completed a course in professional ethics; (c) that Bagdade be assessed a fine of $1,000; and (d) that a copy of the Court's decision following this Report and Recommendation be forwarded to the Illinois Attorney Registration and Disciplinary Commission and to the equivalent authorities in each of the courts of which he is a member of the bar.

Pursuant to the Referral Order, the Clerk of the Court shall immediately serve Bagdade with this Report and Recommendation. Bagdade shall have 15 days thereafter to file a response with the Court of Appeals.