In the

# United States Court of Appeals

### For the Seventh Circuit

---

No. 25-1988

HERIBERTO PEREZ-CASTILLO,

*Petitioner*,

*v.*

TODD W. BLANCHE, Acting Attorney General of the United States,

*Respondent*.

---

Petition for Review of an Order
of the Board of Immigration Appeals.
No. A206-788-938

---

ARGUED FEBRUARY 17, 2026 — DECIDED JUNE 1, 2026

---

Before BRENNAN, *Chief Judge*, and RIPPLE and TAIBLESON, *Circuit Judges*.

BRENNAN, *Chief Judge*. Heriberto Perez-Castillo petitioned this court to review a final order of removal from this country. At the same time, his immigration case raises a pressing concern facing the legal profession today: the use of artificial intelligence ("AI") in litigation. Perez-Castillo's opening brief was riddled with AI hallucinations. These included two

dozen fabricated quotations, seven cases wrongly identified as precedent from this circuit, erroneous legal propositions, and assertions of fact flatly contradicted by the record.

Counsel for Perez-Castillo, Abdullah Salah, blamed these errors on another attorney with whom he had contracted to write the brief. That attorney, Farah Chalisa, did not enter an appearance in this case. In Salah's telling, Chalisa used ChatGPT for "stylistic and grammatical review" that resulted in the hallucinations. To better understand what happened, we issued an order to show cause why both attorneys should not be sanctioned for their conduct. Both Salah and Chalisa responded, offering their respective sides of the story.

On the merits, we deny Perez-Castillo's petition for review because it cannot succeed as a matter of law. As for attorney Salah, we impose a fine of $5,000 for violating this court's rules of professional conduct and multiple Federal Rules of Appellate Procedure. Though we decline to sanction attorney Chalisa at this time, we refer this matter to the Attorney Registration and Disciplinary Commission of Illinois for any further action it deems appropriate.

## I

### A

Heriberto Perez-Castillo is a citizen of Mexico who has lived illegally in the United States for most of his life. He first arrived as an infant, but in 2002 he re-entered the country without inspection after briefly leaving. Perez-Castillo has had several run-ins with law enforcement throughout his time in the United States, including multiple arrests for drug crimes and domestic violence.

One criminal incident matters here. Late one night in 2012, Perez-Castillo showed up "highly intoxicated" to his mother's house. They got into an argument. According to the police report, Perez-Castillo then pushed his mother to the floor, kicked her eye, and hit her on the head with "a closed beer he held in his hand." When his brother and two sisters tried to break up the fight, he punched each of them in the face, giving them bloody noses.

Perez-Castillo was convicted of battery under Illinois law. *See* 720 ILCS 5/12-3(a)(1). The court sentenced him to eighteen months of supervision, some of which he served in prison after he violated the terms of his supervision.

When the Department of Homeland Security initiated removal proceedings against Perez-Castillo, his conviction became a sticking point. Perez-Castillo conceded his removability but applied for cancellation of removal under 8 U.S.C. § 1229b(b). The immigration judge denied his application, concluding that Perez-Castillo was ineligible for this form of discretionary relief. Federal immigration law bars anyone convicted of a "crime of domestic violence" from receiving this remedy. *Id.* at (b)(1)(C) (cross-referencing *id.* § 1227(a)(2)(E)(i)). Because the victims of his battery conviction were his mother and siblings, the immigration judge concluded he was categorically ineligible for cancellation of removal.

Independent of his prior conviction, the immigration judge gave another reason for rejecting Perez-Castillo's application. By statute, an applicant is eligible for cancellation of removal only if his removal "would result in exceptional and extremely unusual hardship to the alien's spouse." *Id.* § 1229b(b)(1)(D). Perez-Castillo's wife, a United States citizen,

did have some health problems and depended on her husband to provide for her needs. But she also lived near her father and four adult children from a previous marriage, who could help ease the financial and emotional strain. The immigration judge concluded that these hardships, though real, were not "substantially beyond the hardship typically experienced when a family member is removed from the United States."

The Board of Immigration Appeals affirmed. It agreed in full with the immigration judge's conclusion that the battery conviction was a "crime of domestic violence." And the Board noted that Perez-Castillo waived his challenge to the immigration judge's hardship analysis by failing to raise it before the Board. Perez-Castillo timely petitioned this court for review. 8 U.S.C. §§ 1252(a)(1), (b)(1).

**B**

Cancellation of removal is a discretionary remedy, so we review the decisions of the immigration judge and the Board of Immigration Appeals with a high degree of deference. *Santos Mendoza v. Bondi*, 151 F.4th 900, 903, 905 (7th Cir. 2025). We lack jurisdiction to revisit the facts found by the agency. 8 U.S.C. § 1252(a)(2)(B); *see Patel v. Garland*, 596 U.S 328, 347 (2022). And though we have jurisdiction to consider mixed questions of law and fact, 8 U.S.C. § 1252(a)(2)(D), we apply a "deferential standard of review." *Wilkinson v. Garland*, 601 U.S. 209, 222 (2024).

The unanimous Supreme Court recently explained the standard of review we apply to all final orders of removal reviewable under § 1252(a). *Urias-Orellana v. Bondi*, 146 S. Ct. 845, 851 (2026). Mixed questions of law and fact—like the

question of exceptional and extremely unusual hardship in this case—are reviewed for "substantial evidence." *Id.* Appellate courts reverse under that test only "if, in reviewing the record as a whole, any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* at 849; *see also* 8 U.S.C. § 1252(b)(4)(B).[1] Pure questions of law, by contrast, are reviewed de novo. *Urias-Orellana*, 146 S. Ct. at 849 n.1. But most questions in the immigration context are mixed questions of law and fact, so the immigration judge's overall conclusions merit significant deference. *Wilkinson*, 601 U.S. at 222.

Applying these principles, we must deny this petition for review. Before anything else, Perez-Castillo waived any challenge to the immigration judge's hardship determination in front of the Board of Immigration Appeals.[2] And he did not challenge the Board's waiver determination before this court. Waiver alone requires us to deny his petition. *See Munoz-Rivera v. Garland*, 81 F.4th 681, 687–88 (7th Cir. 2023). A petitioner is eligible for cancellation of removal only if he affirmatively establishes that all four criteria in the statute are satisfied, including the hardship prong. *Santos Mendoza*, 151 F.4th at 906. That burden was not satisfied here.

---

[1] This court has observed that "circuit courts have engaged in a fairly abstract debate about a precise formulation for the appropriate deferential standard of review" after the *Wilkinson* decision. *Santos Mendoza*, 151 F.4th at 905 (collecting cases). Though we did not choose a side in that dispute, *Urias-Orellana* answers the question for us. The substantial evidence test applies because § 1252's jurisdictional provisions do "not speak to the standard of review for removal orders." *Urias-Orellana*, 146 S. Ct. at 854. The only provision speaking to standard of review is § 1252(b)(4), so we follow *Urias-Orellana*'s interpretation of that provision.

[2] *See* Administrative Record at 3–4.

Even if we did reach the hardship question, nothing in the administrative record compels us to reverse the rulings of either the immigration judge or the Board. The immigration judge considered all the relevant factors, including the age, health, and other circumstances of Perez-Castillo's wife (his qualifying relative). Yet, she determined that these circumstances are not out of the ordinary. We agree with her reasoning. Removal will always cause hardship for a spouse or family member. The mitigating factors in this case, including the ready availability of family support, indicate that Perez-Castillo's wife faces no "exceptional and extremely unusual hardship." 8 U.S.C. § 1229b(b)(1)(D). At the least, the immigration judge is due deference under the substantial evidence test, and nothing in this record compels a contrary conclusion. *Id.* § 1252(b)(4)(B).

Finally, Perez-Castillo's application fails because of his battery conviction. Independent of the hardship analysis, a petitioner is ineligible for cancellation of removal if he has been convicted of a "crime of domestic violence." 8 U.S.C. § 1229b(b)(1)(C) (cross-referencing *id.* § 1227(a)(2)(E)(i)). There are two steps to determine whether an offense counts as a "crime of domestic violence." The first is whether the offense is a "crime of violence" under 18 U.S.C. § 16. *Caldera-Torres v. Garland*, 66 F.4th 651, 653 (7th Cir. 2023). The second is whether the victim of that offense was a family member listed in 8 U.S.C. § 1227(a)(2)(E)(i). *Id.*

Perez-Castillo's conviction fits the bill. On the first prong, this court has repeatedly held that a battery conviction under 720 ILCS 5/12-3(a)(1) categorically qualifies as a "crime of violence." *See, e.g.*, *United States v. Shaffers*, 22 F.4th 655, 666 (7th Cir. 2022) (citing *United States v. Vesey*, 966 F.3d 694, 697 (7th

Cir. 2020)). And an offender's mother and siblings are "pro-
tected from that individual's acts under the domestic or fam-
ily violence laws of" Illinois. 8 U.S.C. § 1227(a)(2)(E)(i); *see* 720
ILCS 5/12-3.2(a) (proscribing battery against "any family or
household member"), *and id.* at 5/12-0.1 (defining "family or
household members" to include "parents, … and other per-
sons related by blood"). Because Perez-Castillo does not con-
test that his mother and siblings were the victims of his 2012
battery conviction, he is ineligible for cancellation of removal.

For these reasons, the decisions of both the immigration
judge and the Board stand. We deny this petition for review.

## II

That is not the end of this matter. As we reviewed the case,
we discovered several problems with the petitioner's brief.
Roughly half of the cases cited in the brief either do not exist
or were falsely labeled as Seventh Circuit cases. Moreover,
nearly every quotation in the brief could not be traced to a real
opinion—hallmarks of AI hallucinations.[3]

Suspecting that AI was used to prepare the brief, we took
a series of steps to better understand how these errors came
about. For the benefit of other courts facing similar issues, we
detail these steps before turning to sanctions.

## A

The first twelve pages of the petitioner's opening brief ap-
peared ordinary, aside from a few errors.[4] But the first several

---

[3] Salah did not file a reply brief on behalf of Perez-Castillo.

[4] The brief included incorrect dates and a record cite mismatched to
the sentence it supported. It also stated the Immigration Judge issued an
oral decision when she issued a written decision.

pages of the standard of review and discussion sections included quotes that could not be found in the cited opinions.

The last eleven pages of the brief contained the most serious errors. From pages 19 to 29, every quote appeared to be an AI hallucination. And many of the "Seventh Circuit" cases cited turned out to be mislabeled opinions from other circuits that were unrelated to the issues in this case. One case does not exist at all.[5] All told, there were twenty-four unattributable or outright false quotes, along with at least seven mislabeled or nonexistent cases.

As troubling were the false or unsupported claims about the record recited in the brief. For one, it described "[c]redited testimony" that Perez-Castillo's "U.S. citizen children" would face hardships with their education, because they were "deeply integrated into local schools." Yet all Perez-Castillo's children are over the age of twenty-five and out of school. For another, it argued that the agency ignored "extensive documentation detailing pervasive economic instability, lack of accessible healthcare, and political insecurity in Petitioner's home country." So, his wife and children would face the choice of "relocating to a country where their safety, education, and healthcare would be compromised" or remaining in this country without his support. But the record contains no evidence of political instability in Mexico, and Perez-Castillo's wife testified that even if her husband was deported, she planned to stay in the United States. Finally, in discussing the hardship standard, the brief suggests the Board of

---

[5] To avoid memorializing errors, we have chosen not to include any of the false citations or quotes in this opinion. The original brief can be found at docket entry 15 on the CM/ECF page for this case.

Immigration Appeals disregarded the Immigration Judge's factual findings and "insert[ed] its own unsupported assumptions" into the record. In reality, the Board did not discuss any of this evidence in its two-page opinion because it concluded that Perez-Castillo waived his hardship challenge.

## B

After discovering these issues, we ordered the petitioner to respond and explain "whether any form of generative-artificial intelligence (AI) assistance was used in preparing the petitioner's brief." We also reinstated oral argument, which had previously been waived at the joint request of the parties. And we instructed the parties to be prepared to discuss these concerns in person. That order was issued three and a half weeks before oral argument.

Two weeks later, Attorney Salah filed his response. He admitted AI was used in preparing the brief but attributed it to another lawyer. Salah informed us that he had outsourced the research and preparation of the brief to Farah Chalisa, a member of the Illinois bar. In fact, Salah conceded that he "had no input in the research and preparation of the brief and fully believed that it was in compliance with all court rules, orders and the Rules of Ethics." Salah claimed that Chalisa told him she used AI "for the limited purpose of stylistic and grammatical review," but she did not do a "final and complete line by line verification of quotations and citations."

Salah also informed us that he was waiting for corrections from Chalisa so he could file a revised brief. He ultimately filed that brief late the night before oral argument. Though the new brief did replace the inaccurate citations with real cases, it did not cure all deficiencies. The text of the new brief was

substantially unchanged. In many places, it still made sweeping, unsupported statements about our caselaw. And it did not remedy the factual problems about Perez-Castillo's family and the agency proceedings.

## C

At oral argument, we inquired about Salah's response to our order regarding AI use in petitioner's brief.[6] He reiterated that Chalisa wrote the brief in full and that he played no part in preparing it. "[H]er contention" remained that the errors were the product of a grammar check run through ChatGPT. In his words, the "citations were changed in a way that I don't understand."

When questioned, Salah admitted he had not reviewed the original brief for accuracy. Nor had he reviewed the edited brief. And when asked about the factual misrepresentations in the record, he struggled to answer basic questions about the age of his client's children.

In a particularly telling exchange, Salah defended his choice not to review the briefs by pointing at Chalisa. He said, "I assume when an attorney has put themselves out there as an attorney that … writes briefs that they're following the rules. And I didn't believe that it was on me to redo the brief for someone who's writing briefs as an attorney." We reminded him that under the Federal Rules of Appellate Procedure and this court's standards of professional conduct, he

---

[6] The audio recording of the oral argument for this case can be found on the court's website. The discussion of AI usage in the brief begins at 4:13 and resumes at 15:49.

was responsible for any brief going out in his name. Salah replied, "I understand."

**D**

After oral argument, we issued an order to show cause directed at both Salah and Chalisa. We noted that both briefs might run afoul of several Federal Rules of Appellate Procedure and that we were considering sanctions. In his response, Salah again ascribed the errors to Chalisa, but he admitted he should have reviewed the brief.

Chalisa's response provided more details. Through counsel, she admitted she "used ChatGPT to perform the copyediting tasks necessary" to ensure the brief "was as grammatically correct as possible," as well as to confirm that it was "structurally and stylistically appropriate." Yet, she averred she did not use ChatGPT or any other large language AI model "to perform any legal research or to draft the petition itself." She did, however, hint at using "any system incorporated into Lexis/Nexis" as part of her research process— a portion of her response that is still unclear.

Chalisa submits that during this grammar check, ChatGPT "hallucinate[d] facts not present in the record in this matter and insert[ed] them into the draft petition." She also says it rendered her "correct case citations incorrect by changing circuit numbers, page numbers, and the like." She asserts she "in no way instructed or prompted ChatGPT to do any of that. But that is what it did."

Then, without further review, Chalisa sent the "grammar-checked" brief to Salah, who filed it with this court. After Salah learned about the errors, he asked Chalisa to fix the brief. She submits that she "understood Mr. Salah to be asking for

her assistance with correcting case citations," but she was "not aware of the factual errors that remained in the petition." So, she removed the erroneous citations and "sent the corrected petition back to Mr. Salah."

Overall, Chalisa's response is apologetic. Expressing her regret for these mistakes, she accepts responsibility for not checking the brief after using ChatGPT. And she assures us this "will not happen again." She also committed to attending Illinois's Minimum Continuing Legal Education course on the risks, benefits, and ethical considerations of using AI. Noting that she is a new attorney who has worked as a sole practitioner since 2025, she asks us to discharge the order to show cause without imposing sanctions.[7]

## III

Not every case involving the misuse of AI merits sanctions. This court chose not to sanction a pro se litigant who included a few "non-existent quotations" in his appellate brief. *Jones v. Kankakee Cnty. Sheriff's Dep't*, 164 F.4th 967, 969–71 (7th Cir. 2026). So too where a member of this court's bar submitted a brief with similar errors in its standard of review section, which were "presumably copied and pasted" from another brief. *Dec v. Mullin*, 171 F.4th 940, 946–47 (7th Cir. 2026). Because that attorney did not misrepresent the facts or substantive law, and given her acceptance of responsibility and sincere apology, we merely admonished her. *Id.* at 947.

This case is categorically different. The petitioner's brief was replete with false quotations, erroneous statements of law, and factual representations contradicted by the record.

---

[7] Chalisa was admitted to the Illinois bar in January 2021.

Further, the attorney who signed the brief admitted to violating this court's rules of professional conduct but did not take responsibility or apologize. The author of the brief has shown contrition, yet she has not provided a fully satisfying explanation for these errors. We address each attorney's culpability in turn.

**A**

Federal courts confronted with AI hallucinations in briefs and motions have identified several sources of authority for sanctions. Most district courts rely on Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and the court's inherent authority to sanction for bad faith conduct. *See generally Zheng v. Internet Corp. for Assigned Names and Nos.*, 813 F. Supp. 3d 1135, 1138–44 (C.D. Cal. 2025); *Disability Rights Miss. v. Palmer Home for Children*, No. 1:24-cv-99-SA-DAS, 2025 WL 3691876 (N.D. Miss. 2025); *Obi v. Cook County*, No. 25-cv-3096, 2026 WL 1001481 (N.D. Ill. 2026). The courts of appeals, by contrast, have invoked a few different sources for sanctioning attorneys. No unified approach prevails. *See, e.g.*, *Amarsingh v. Frontier Airlines, Inc.*, No. 24-1391, 2026 WL 352016, at *5–8 (10th Cir. 2026) (electing to proceed under FED. R. APP. P. 38); *Fletcher v. Experian Info. Sols., Inc.*, 168 F.4th 231, 239–40 (5th Cir. 2026) (invoking FED. R. APP. P. 46 and inherent powers); *Whiting v. City of Athens*, 170 F.4th 455, 459 (6th Cir. 2026) (FED. R. APP. P. 38 and inherent authority, not Rule 46).

For Salah, as counsel of record, we elect to impose sanctions under Federal Rule of Appellate Procedure 46. This rule affords federal courts of appeals broad power to "suspend, disbar, or discipline a member of our bar 'for conduct unbecoming a member of the bar.'" *Camacho-Valdez v. Garland*, 30 F.4th 675, 679 (7th Cir. 2022) (quoting FED. R. APP. P. 46(b), (c)).

We invoke Rule 46 in situations where "counsel's unbecoming conduct affects other litigants or misleads the court." *Id.* (citation omitted). That includes cases where counsel makes factual misrepresentations in briefs, whether intentional or not. *Waldon v. Wal-Mart Stores, Inc.*, 943 F.3d 818, 824–26 (7th Cir. 2019) (collecting cases); *see also Klein v. O'Brien*, 884 F.3d 754, 757–58 (7th Cir. 2018). So, we see Rule 46 as the natural fit for a case involving attorney misconduct that permitted unchecked AI hallucinations to be included in a brief. *Accord Fletcher*, 168 F.4th at 239 (Fifth Circuit invokes Rule 46 when an attorney "used [AI] to draft a substantial portion—if not all—of her reply brief"); *D'Ambrosio v. Meta Platforms, Inc.*, No. 25-2231, 2026 WL 1361951, at *12 (7th Cir. 2026) (using Rule 46 as the basis for an order to show cause involving AI errors).

In its seminal case interpreting Rule 46, the Supreme Court held that "conduct unbecoming a member of the bar" is "conduct contrary to professional standards that shows an unfitness to discharge continuing obligations to clients or the courts, or conduct inimical to the administration of justice." *In re Snyder*, 472 U.S. 634, 645 (1985). When attorneys make "misrepresentations, omissions, or failures of inquiry," we can impose sanctions—whether the attorneys are "deliberately misleading the court," "displaying egregious misjudgment," or even are negligent. *In re Lightfoot*, 217 F.3d 914, 916–17 (7th Cir. 2000) (collecting cases). In many ways, our approach to evaluating misrepresentations parallels the inquiry district courts conduct under Federal Rule of Civil Procedure 11. *In re Kelly*, 808 F.2d 549, 551 (7th Cir. 1986) (Rule 11 "is not incorporated by reference or otherwise in any rule of this court, but its requirements help to define conduct becoming a member of the bar.").

Rule 46 includes the power to impose monetary sanctions. *Camacho-Valdez*, 30 F.4th at 679–80; *Waldon*, 943 F.3d at 825 (collecting cases); *In re Boyle-Saxton*, 668 F.3d 471, 472 (7th Cir. 2012) (issuing order to show cause why attorney "should not be fined" for defying a court order). This court has fined members of our bar under Rule 46 for submitting briefs including statements "not well grounded in fact or law" that "falsely impute[] a particular position to this court." *Mays v. Chi. Sun-Times*, 865 F.2d 134, 140 (7th Cir. 1989). And we have invoked Rule 46(c) to impose monetary penalties on attorneys who improperly certify portions of their brief, especially when there are factual misrepresentations. *In re Galvan*, 92 F.3d 582, 584 (7th Cir. 1996); *Waldon*, 943 F.3d at 824–26.

In this case, Salah has engaged in conduct unbecoming of members of the bar. He signed his name to a brief containing many AI hallucinations. He admitted he did not review the brief before submitting it. Yet he signed and submitted it, certifying that the representations in the brief were warranted by existing law and supported by the record. That conduct alone "display[s] egregious misjudgment" and is inimical to the administration of justice, making it sanctionable under Rule 46. *Lightfoot*, 217 F.3d at 916.

What is more, Salah did not review the *second* version of the brief before submitting it—even after this court put him on notice about its factual and legal deficiencies. Though the false citations were changed, the revised brief still contained unsupported assertions and at least two hallucinated quotes from the original brief. In these circumstances, we would expect members of this court's bar to scrutinize the brief before re-submitting it. Salah did not take these precautions.

Both versions of the brief violate Federal Rule of Appellate Procedure 28. *See McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783, 791 (7th Cir. 2019) (attorneys violate Rule 28 when they submit briefs "laden with assertions that have no basis in the record and arguments that have no basis in the law"). Moreover, Salah flouted his duties to this court. "Under this circuit's standards for professional conduct, lawyers promise that they will 'not knowingly misrepresent, mischaracterize, misquote, or miscite facts or authorities in any oral or written communication to the court.'" *Dec*, 171 F.4th at 947 (quoting this court's Standards for Professional Conduct). It could be debated whether Salah misrepresented the law or facts "knowingly" in the first version of his brief. But the same cannot be said for his second brief. Salah submitted that version again without review, this time fully aware of the risk of errors. Attorneys practicing before this court should never sign and submit a brief they have not reviewed. That is especially true when they know the brief might contain serious misrepresentations.[8]

For all these reasons, we impose a fine of $5,000 on Salah under Federal Rule of Appellate Procedure 46(c). We do not believe it is appropriate to bar him from practicing before this court at this time, as he has no prior record of misconduct. But Salah is on notice that the next time any incident occurs, he could be subject to disbarment before this court. We impose this fine to reflect the seriousness of submitting briefs

---

[8] Salah says he failed to review the revised brief because this court declined to postpone oral argument. Oral Arg. at 15:49. But Salah had over three weeks from the date we alerted him to the AI hallucinations before oral argument. That was plenty of time to identify and correct errors.

containing AI hallucinations to this court, which is "inimical to the administration of justice." *Snyder*, 472 U.S. at 645.

**B**

Our authority to sanction Chalisa rests on other grounds. Only "an attorney who practices before" a federal court of appeals can be sanctioned under Rule 46(c). Chalisa is not admitted to this court's bar and she did not enter an appearance in this case. We have hesitated to sanction lawyers who are not admitted to this court's bar under Rule 46, even when they technically "practice[] before" this court. *Cf. Gorokhovsky v. Stefantsova*, 825 F. App'x 375, 377 (7th Cir. 2020) ("Gorokhovsky is not a member of our bar and therefore cannot be disciplined under Rule 46[(b)]."). And it is not clear that merely writing a brief qualifies Chalisa as someone who "practice[d] before" us in this matter.

Still, federal courts have inherent authority to "punish the full range of litigation abuses." *Manez v. Bridgestone Firestone N. Am. Tire, LLC*, 533 F.3d 578, 591 (7th Cir. 2008) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991)). That power is not limited to attorneys who practice before this court; it reaches anyone who engages in bad faith conduct impacting our ability to manage and decide cases. "No matter who allegedly commits a fraud on the court—a party, an attorney, or a nonparty witness—the court has the inherent power to conduct proceedings to investigate that allegation and, if it is proven, to punish that conduct." *Id.* at 585. We invoked this authority to issue the order to show cause to Chalisa. After putting her on notice of the errors and giving her an opportunity to explain herself, we can impose sanctions on her.

At this juncture, though, we decline to do so. We have no evidence that Chalisa committed fraud on this court, nor does anything in her apologetic response indicate bad faith. In these specific circumstances, inherent authority sanctions are not necessary or appropriate. Nevertheless, we admonish her, as her use of AI in drafting this brief "result[ed] in confusion and time wasted" for this court. *Dec*, 171 F.4th at 948. Attorneys must ensure that their work product does not contain false legal citations or factual errors, whether they enter an appearance in the case or not.

### C

Beyond the issue of monetary sanctions, we think it best to refer this matter to the Attorney Registration and Disciplinary Commission of Illinois. *Cnty., Mun. Emps.'s Supervisors' and Foremen's Union Loc. 1001 v. Laborers' Int'l Union of N. Am.*, 365 F.3d 576, 580 (7th Cir. 2004). Even after conducting our own inquiry into the matter, questions remain as to how such egregious errors made their way into this brief.

Chalisa correctly expressed remorse in her response to the order to show cause. But her factual explanations are wanting. It is unlikely that such pervasive errors would arise through a grammar check. Moreover, the way Chalisa handled the revisions process was perplexing. She claims she was "not aware of the factual errors that remained in the petition." At the same time, she maintains her pre-ChatGPT draft contained no factual errors, as far as she knew. Yet, an author familiar with this case could not miss these glaring fact problems, especially because they were intertwined with fabricated quotations.

An ARDC review of this case would help us to know if Chalisa's response to our show cause order accurately reflects

the nature of her AI usage. *See* Ill. R. Pro. Conduct (2010) R. 3.3(a)(1) (eff. Jan. 1, 2010) ("A lawyer shall not knowingly make a false statement of fact or law to a tribunal."). Further, we note some concern about whether the client consented to the contractual agreement between Salah and Chalisa. Both attorneys' responses to our orders depict an agreement that raises the possibility of an impermissible fee-splitting arrangement. *See* Ill. R. Pro. Conduct (2010) R. 1.5(b), (f) (eff. July 1, 2023). At oral argument, Salah said "the client was aware" other attorneys outside the firm would be "involved" in preparing the brief. Oral Arg. at 6:37. But he admitted he did not discuss the terms of Chalisa's fee with Perez-Castillo "to that [level of] detail." The Illinois Rules require the client to consent, in writing, to this kind of arrangement. *See also* Ill. R. Pro. Conduct (2010) R. 1.2(e) (eff. Jan. 1, 2016). The ARDC may conduct a more searching review of these questions.

## IV

Because there is no merit to Perez-Castillo's argument for cancellation of removal, we deny his petition for review. We also note that Perez-Castillo has not been prejudiced by the shortcomings of his attorneys. Pure legal considerations bar his application for cancellation of removal. Plus, a different attorney represented him in the agency proceedings. That attorney waived the challenge to the immigration judge's hardship determination, undercutting this petition.

We impose monetary sanctions of $5,000 on attorney Abdullah Salah under Federal Rule of Appellate Procedure 46(c) because he failed to check the AI-hallucinated citations, legal propositions, and factual representations in two briefs he signed and submitted to this court. We do not impose sanctions on attorney Farah Chalisa at this time.

We also direct the clerk of this court to send copies of this opinion to the Attorney Registration and Disciplinary Commission of Illinois for such consideration as it sees fit. *Wade v. Soo Line R.R. Corp.*, 500 F.3d 559, 566 (7th Cir. 2007). Further, we direct the clerk of court to include copies of the petitioner's briefs (first and second versions); Salah's initial response to our January 23, 2026 order alerting him to the AI hallucinations; both responses to our order to show cause; and the recording of the oral argument. Upon request, the clerk of court may also forward any other documents necessary to give the ARDC context for this matter. *See United States v. Roti*, 484 F.3d 934, 938 (7th Cir. 2007).

We will not discharge our show cause order until the ARDC has had a chance to review this matter. We direct attorney Salah and attorney Chalisa each to file a status report with this court informing us whether the ARDC has chosen to investigate. Those reports should be filed one year from the date this case is decided, or within seven days of any final action by the ARDC, whichever comes first. At that point, we may consider whether additional sanctions are appropriate.

There is "little doubt that litigants and courts" will develop "sound and workable practices" governing AI usage in due time, but that point has not yet arrived. *Dec*, 171 F.4th at 947 (quoting *Jones*, 164 F.4th at 970). Briefs like those petitioner's counsel submitted in this case are unacceptable and "result in confusion and time wasted" for this court. *Id.* at 948. Members of this court's bar must be exceedingly careful about outsourcing their work product. At all times, attorneys must follow both the Federal Rules of Appellate Procedure and this

court's Rules of Professional Conduct. If not, sanctions may follow.

PETITION DENIED WITH SANCTIONS